PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* HIPÓLITO RODRÍGUEZ, Defendant and Appellant.

No. 3238.   Argued June 19, 1928.—Decided July 26, 1928.

*Armando A. Miranda* for the appellant. *José E. Figueras* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The information presented by the district attorney reads in part as follows:

"The said Hipólito Rodríguez, on January 6, 1927, on the road from Arecibo to San Juan in the ward of Santana of Arecibo, Porto Rico, unlawfully and wilfully and while driving as chauffeur an automobile or motor vehicle did so with such carelessness and negligence and without observing due care and caution that he struck Francisco Padilla (a human being), inflicting on him serious injuries which caused his death almost instantaneously."

The defendant pleaded not guilty, the case was brought to trial and the jury found a verdict of involuntary homicide. The court sentenced him to three years in the penitentiary and he took this appeal, assigning in his brief seven errors.

The first three and the sixth may be considered together. While several eyewitnesses were describing the place of the collision which caused the death of Padilla a photograph was shown to them and they were asked whether it was a faithful representation of that place, among other questions in regard to details which appeared therein. The defendant objected and the court allowed the witnesses to testify. The first three assignments refer to these incidents. The photograph had not been introduced in evidence when the said eyewitnesses were testifying. It was introduced after the photographer who took it had testified. The defendant objected and the question is presented to the consideration of this court by the sixth assignment.

In our opinion these assignment are without merit. The fact that the photograph was taken some hours after the collision occurred was no bar to its admission. It was not attempted to make it appear that it had been taken at once. The truth was told and the testimony of the eyewitnesses in describing the place, the damage done by the automobile, its

condition after the collision and their statements that the photograph faithfully represented everything, together with the testimony of the photographer who took it, constituted a sufficient basis for its admission.

We find the following in Corpus Juris:

"A photograph proved to be a true representation of the person, place, or thing which it purports to represent is competent evidence of anything, of which it is competent and relevant for a witness to give a verbal description. While a photograph must first be proved to be a correct and true representation of the thing which it purports to represent before it is admissible as evidence, it need not be verified by the oath of the photographer who took it; the foundation for its introduction may be laid by any one who testifies to its correctness as a representation or likeness." 16 C. J. 744, sec. 1528.

In his treatise on Evidence Wigmore says:

"The witness thus standing sponsor must be *qualified by observation* to speak of the matters represented in the picture. Whether this requirement is properly fulfilled should be left to the determination of the trial Court.

"The witness thus using the map or photograph as representing his knowledge *need not be the maker of it.* He affirms it to represent his observation; and this is the essential element." Wigmore on Evidence, Vol. 1, p. 900.

The Supreme Court of California, in *Barkovitz* v. *American River Gravel Co.*, 191 Cal. 195, held as follows:

"Some controversy arose as to the proper foundation for the admission of photographs of the wrecked automobile in evidence. The rule is quite simple. Testimony that a photograph is a correct representation of the object sought to be shown is a sufficient foundation for its admission. Such testimony need not necessarily be given by the photographer who took or finished the photograph but may be given by any witness having sufficient knowledge of the object to say that the photograph is a faithful representation thereof. (*People* v. *Ah Lee,* 164 Cal. 350, 352 [128 Pac. 1035]; *People* v. *Durant,* 116 Cal. 179, 212 [48 Pac. 75].)"

The fourth assignment of error is thus formulated:

"'The lower court erred in allowing the district attorney to ask the medical expert the question which appears at the end of page 19 of the record.''

The part of the record referred to reads as follows:

"Q.—My question is, how were the injuries inflicted? What agency could inflict such injuries? Any blow received by the body which produced the fracture of the bones and caused the hemorrhage. Q.—Do you think that a collision. . . . Attorney Reyes.—I object now to the suggestion made by the prosecuting attorney. Judge.— He speaks of a blow. Questions must be put to the witness, to the expert, as if they were hypothetical. Q.—Supposing that Francisco Padilla was riding a bicycle and an automobile was coming. . . . Attorney Reyes.—I object to questions being put in that way. Judge.— Let the district attorney finish his question. Q.—Supposing that Francisco Padilla was riding a bicycle and a car had collided with the bicycle, do you think that collision might have caused those injuries? Attorney Reyes.—We object to that question because it is illegal. Under the supposition that Padilla was riding a bicycle it does not necessarily follow that it collided with the car of the defendant; he might have met with another accident which could have caused that injury. Judge.—Objection overruled. Attorney Reyes. —I take exception. Q.—Answer the question. Witness.—Those injuries might have been caused by such a collision.''

A mere reading of this is sufficient to conclude that there is no error. The expert under examination was the doctor who had performed the autopsy on Padilla and had just testified on the result thereof, and the hypothetical question was based on facts already established by the evidence.

Corpus Juris abstracts the jurisprudence on the matter as follows:

"A properly qualified physician who has himself examined the body of deceased or in response to a hypothetical question on the facts as to it described by other witnesses, may be allowed to express his opinion as to the cause of the death of deceased, or may state in what different ways death might have been caused, or that no natural cause of death was discovered, or that death was not from a particular cause, and similar evidence may be given by the physician attending deceased between the time of the injury and his death, or by other qualified experts, such as chemists.'' 30 C. J. 219.

However, unless it is really necessary no recourse should be had to hypothetical questions. Sometimes a structure erected after great efforts topples by reason of evidence improperly submitted and admitted and in many cases unnecessary.

In the present case, for example, when there are witnesses who saw Padilla on his bicycle collide with the automobile driven by the defendant and thrown over the fence of the Santana school, finding him dead instantly, what need was there that the doctor should testify regarding the result of the autopsy?

The fifth assignment of error has no merit whatever. It is based on the fact that the court admitted the testimony of a witness who was in the court-room and who therefore had had an opportunity to hear the evidence introduced. No observation had been made, no rule had been adopted, and the witness, who was the photographer, testified in substance to the taking of the photograph about which no other witness had testified.

It remains only to consider the last assignment. It is contended therein that the court erred in not ordering the jury to find a verdict of not guilty because the accused had not been identified and because it had not been proved that the accused was driving the automobile carelessly and negligently.

Two of the witnesses recognized without hesitation the accused as the person who was driving the automobile which caused the collision. The negligence, the carelessness, the lack of caution on the part of the accused consisted in driving his car at great speed along a public road in front of a school where another car was parked while a man on a bicycle was coming in the opposite direction.

It is true that the number of miles per hour at which the accused was driving was not shown, but one of the witnesses, Ezequiel Rodríguez, testified as follows:

"He passed by me at very great speed, at such speed that my hat flew off and I had to catch it; and Ramón Rivera and Federico Díaz

were by my side and I exclaimed: At what a terrible speed that car is going; and fifty meters away there was a man coming on a bicycle, going to turn to one side. and just here at the speed he was driving distance there was a car on his right side that was parked.

"On this side, on the right hand side, and just there the car passed at that speed and on reaching that spot it seems that he was going to turn to one side, and just here at the speed he was driving he could not stop the car, and just there he collided and struck that man who was riding on a bicycle along his right side and threw him into the school ground."

Similar terms were used in their testimony by witnesses José Rodríguez, Federico Díaz, Ramón Rivera and Ana Ortiz, who were not contradicted. The accused submitted no evidence.

The violence of the collision was such that not only was Padilla thrown as stated, producing bruises on his face, chest, both arms, hip and left leg and fracturing the first, second, third, fourth and fifth ribs of the right side in front of the chest, the collar-bone, the left humerus, the fourth and fifth left ribs and some others, but also one of his shoes was knocked off, the impact breaking the fence and finally over-turning the car.

The judgment appealed from must be affirmed.